Filed 8/20/18

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| EILEEN CONNOR, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S229428 |
| v. | ) | |
| | ) | Ct.App. 2/4 B256075 |
| FIRST STUDENT, INC., et al., | ) | |
| | ) | Los Angeles County |
| Defendants and Respondents. | ) | Super. Ct. No. JCCP4624 |
| _____ | ) | |

We granted review to resolve a conflict in the Courts of Appeal over whether the Investigative Consumer Reporting Agencies Act (ICRAA) (Civ. Code, § 1786 et seq.)[1] is unconstitutionally vague, in violation of due process, as applied to employer background checks because it overlaps, in part, with the Consumer Credit Reporting Agencies Act (CCRAA) (§ 1785.1 et seq.). We agree with the Court of Appeal that some overlap between the two statutes does not render ICRAA unconstitutionally vague when the statutes are otherwise unambiguous. We therefore affirm the Court of Appeal judgment.

## FACTS AND PROCEDURAL HISTORY

Current and former bus drivers filed this class action against their employers, defendants First Student, Inc., and First Transit, Inc. (collectively First), and HireRight Solutions, Inc., and HireRight, Inc. (collectively HireRight), the investigative consumer reporting agencies that conducted background checks

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

on them.  Connor is the selected bellwether plaintiff for the operative consolidated fourth amended complaint.**2**

Connor worked as a school bus driver for Laidlaw Education Services, which First acquired in October 2007.  First requested that consumer reporting agency USIS (HireRight's corporate predecessor) conduct background checks on its employees on three separate occasions in 2007, 2009, and 2010.  The background reports elicited information about the employees, including criminal records, sex offender registries, address history, driving records, and employment history.  First "admits that those background checks [would be] used to confirm that Connor and the other employees 'are properly qualified to safely perform their job duties.' "

Before conducting the background checks, First sent Connor a "Safety Packet" booklet.  The booklet included a notice, entitled "Investigative Consumer Report Disclosure and Release," that authorized USIS to prepare a consumer report or investigative consumer report.  The notice provided that Connor could view the file maintained on her, receive a summary of that file by telephone, or obtain a copy of it.  The notice also explained that Connor could request an "investigative consumer report" that included " 'names and dates of previous employers, reason for termination of employment, work experience, accidents, academic history, professional credentials, drugs/alcohol use, [and] information

---

**2**     The 1,200 plaintiffs in the coordinated cases make identical claims.  The operative complaint for all plaintiffs is the consolidated fourth amended complaint in which Connor and another plaintiff, Jose Gonzalez, were appointed as bellwether plaintiffs.  First filed a motion for summary judgment against Connor, and HireRight filed a motion for summary judgment against Gonzalez.  The trial court granted both motions for First, and both Connor and Gonzalez filed a notice of appeal.  The Court of Appeal consolidated the appeals, but later vacated its consolidation order as to Gonzalez's appeal when HireRight filed a petition for bankruptcy.  This appeal concerns First's judgment against Connor only.

relating to [the employee's] character . . . which may reflect upon [her] potential for employment.' " The notice included a check box that generally described Connor's rights under ICRAA and informed her that she could check the box if she wanted to receive a copy of the report. (See § 1786.16, subd. (b)(1).) It also informed her that checking the box would release First from all claims and damages arising out of or relating to its background investigation. Connor's lawsuit alleges that the notice did not satisfy the ICRAA's specific requirements and that First failed to obtain her written authorization to conduct the background check, as ICRAA requires. (§ 1786.16, subd. (a)(2)(C) [consumer subject to ICRAA must authorize "in writing the procurement of the report"].) Written authorization ensures that the subjects of the investigation are aware of their right to receive copies of the information gathered about them so they can correct inaccuracies, dispute the information, and request reinvestigation. (§ 1786.2 et seq.)

Connor sued First for violating ICRAA because its 2010 notice did not satisfy ICRAA notice requirements and First did not obtain her written authorization to conduct the background investigation.[3] (See § 1786.16, subd. (a)(2)(C).) "First admit[ted] that the background checks it requested HireRight to prepare included reports containing information regarding the subject's criminal records, sex offender status, address history, driving records, and employment history." It moved for summary judgment, however, claiming that ICRAA is unconstitutionally vague as applied to Connor's claim because it overlaps with

---

[3]     A subgroup of plaintiffs who were terminated after employers conducted posthiring background checks sought injunctive relief under the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (UCL). The UCL claim is predicated on proof of the ICRAA violation, however.

3

CCRAA and that, in any event, First's notice satisfied CCRAA.  The trial court granted First's motion.

The Court of Appeal reversed the trial court's judgment, finding that although ICRAA and CCRAA might overlap to some degree, there is no "positive repugnancy" between them that would render ICRAA unconstitutional.  The court held that agencies that provide reports (including reports prepared for employers addressing employee creditworthiness and character) "can comply with each act without violating the other."  We granted First's petition for review.

## DISCUSSION

### I.  Statutory Background

In 1970, the Legislature enacted the Consumer Credit Reporting Act.  (Civ. Code, former § 1785.1 et seq., added by Stats. 1970, ch. 1348, § 1, p. 2512 and repeated by Stats. 1975, ch. 1271, § 2, p. 3377.)  The act governed "credit rating reports" that included consumer credit record and standing reports.  That same year, Congress passed the Fair Credit Reporting Act (FCRA).  (15 U.S.C. § 1681 et seq.)  FCRA defined a "consumer report" to include an individual's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living."  (15 U.S.C. § 1681a(d)(1).)  FCRA distinguished between consumer reports that contained information obtained by personal interviews, and consumer reports that were gathered by other means. (*Id.*, § 1681a(e).)

In 1975, our Legislature repealed the 1970 Consumer Credit Reporting Act and enacted ICRAA and CCRAA to govern consumer background reports, including checks conducted for employment purposes.  (§§ 1786 et seq., 1785.1 et seq.)  The statutes were modeled after FCRA and were intended to serve complementary, but not identical, goals.  Both ICRAA and CCRAA had similar purposes.  They were enacted to ensure that consumer reporting agencies "exercise

4

their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." (§§ 1785.1, subd. (c), 1786, subd. (b).) As originally enacted, ICRAA applied to consumer reports that included character information obtained only through personal interviews. (Stats. 1975, ch. 1272, § 1, p. 3378.) The statute was, in part, designed to protect consumers from identity theft by giving them "copies of any investigative consumer reports made on them." (§ 1786, subd. (e).)

ICRAA states that "[a]n investigative consumer reporting agency" may provide an "investigative consumer report" to a person other than the subject of the report under limited circumstances. (§ 1786.12.) Such a report can be given to a person who "[i]ntends to use the information for employment purposes." (*Id.*, subd. (d)(1).) As the Court of Appeal observed, the statute defines an "investigative consumer report" as one "in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means." (§ 1786.2, subd. (c).)

ICRAA requires the person procuring the report (or causing it to be made) for employment purposes "other than suspicion of wrongdoing or misconduct by the subject of the investigation" (§ 1786.16, subd. (a)(2)), to "certify to the investigating consumer reporting agency" (*id.*, subd. (a)(4)) that it provided the consumer a "clear and conspicuous disclosure in writing" (*id.*, subd. (a)(2)(B)) that includes the act's disclosure requirements, and that the consumer gave a written authorization for the report's procurement. In the event the recipient of an investigative report takes an adverse employment action against the consumer based on information in the report, the person taking the action must provide the consumer with the name and address of the investigative consumer agency that supplied that report. (§ 1786.40, subd. (a).)

5

Until 1998, consumer reports were classified under CCRAA or ICRAA, depending largely on the means used to collect the information in those reports.  In pertinent part, CCRAA defined "consumer credit report" to include "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used or is expected to be used . . . for . . . employment purposes." (Former § 1785.3, subd. (c).)[4]  That definition excluded "any report containing information *solely* on a consumer's character, general reputation, personal characteristics, or mode of living *which is obtained through personal interviews* with neighbors, friends, or associates of the consumer reported on, or others with whom he is acquainted or who may have knowledge concerning any such items of information."  (*Ibid*., italics added.)  Thus, certain reports containing information gathered through personal interviews were subject to ICRAA only.  But both statutes governed reports that contained information relating to character *and* creditworthiness, based on public information and personal interviews that were used for employment background purposes.

Congress expanded FCRA in 1996 to enhance consumer privacy protections.  (Omnibus Consolidated Appropriations Act of 1997 (Pub.L. No. 104-208 (Sept. 30, 1996) 110 Stat. 3009, 426-462).[5]  Two years later, our Legislature

---

[4]     This language is still present in the current version of CCRAA.  (§ 1785.3, subd. (c).)

[5]     The amendments to FCRA "were designed to better ensure the accuracy and privacy of the information contained in consumer or credit reports."  (Fed. Trade Com., Privacy, Accuracy and Fairness of Sensitive Personal Information Enhanced for Consumers Under Amended Credit Reporting Statute (Sept. 29, 1997) <http://www.ftc.gov/news-events/press-releases/1997/09/privacy-accuracy-and-fairness-sensitive-personal-information> (as of Aug. 15 2018).  All Internet citations in this opinion are archived by year, docket number, and case name at <http://www.courts.ca.gov/38324.htm>.

amended ICRAA to eliminate the personal interview limitation and expand the statute's scope to include character information obtained under CCRAA or "obtained through any means." (Stats. 1998, ch. 988, § 1, p. 7549.)[6] The amendment was a response to the sheer volume of employers using background checks to prescreen applicants, and was intended to promote disclosure and accuracy in background checks, especially in the rental, employment, and insurance contexts. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1454 (1997-1998 Reg. Sess.) as amended Apr. 27, 1998, p. 4.) After the amendment, CCRAA continues to govern consumer reports that include character information obtained from a source other than personal interviews, as long as those reports contain information "bearing on a consumer's credit worthiness, credit standing, or credit capacity." (§ 1785.3, subd. (c).)

## II. Alleged Vagueness Issues

It is a well-settled rule that "a statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." (*Connally v. General Const. Co.* (1926) 269 U.S. 385, 391.) Although even noncriminal legislation can be void for vagueness (see *A.B. Small Co. v. American Sugar Refining Co.* (1925) 267 U.S. 233, 239), "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow . . . and businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. . . . " (*Hoffman Estates v. Flipside, Hoffman Estates* (1982) 455 U.S.

---

[6] The current version of ICRAA continues to exclude credit reports that are "limited to specific information relating to a consumer's credit record or manner of obtaining credit obtained directly from a creditor." (§ 1786.2, subd. (c).)

489, 498; cf. *Ford Dealers Assn. v. Dep't of Motor Vehicles* (1982) 32 Cal.3d 347, 366.)

The threshold question here is one of statutory interpretation. If we conclude that ICRAA and CCRAA are sufficiently clear to indicate that both apply to Connor's background report, neither statute is vague. (Cf. *United States v. Batchelder* (1979) 442 U.S. 114, 123 [That "particular conduct may violate both Titles does not detract from the notice afforded by each"].)

In cases involving statutory interpretation, our " ' "fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose." ' [Citation.] ' "If the statute's text evinces an unmistakable plain meaning, we need go no further." ' [Citation.]" (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 803.) "We construe statutory language in the context of the statutory framework, seeking to discern the statute's underlying purpose and to harmonize its different components." (*Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176, 1183.) Keeping these statutory interpretation principles in mind, we turn to the parties' arguments.

First's principal contention is that CCRAA and ICRAA were initially intended to be exclusive of each other and that the 1998 amendment was not intended to abolish that distinction. First's vagueness argument—that the overlap created by the ICRAA amendment renders the statute unconstitutionally vague whenever CCRAA also might apply—follows the holding of *Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604 (*Ortiz*). By contrast, Connor asserts that the two statutes were never exclusive, and the 1998 amendment did not change that fact.

In *Ortiz*, an apartment rental applicant, who was approved after a rental manager's unlawful detainer search came up clear, sued the management company for violating ICRAA because it failed to provide her with a check box to request a

copy of the background report, and because it had not provided her written notice. (*Ortiz*, *supra*, 157 Cal.App.4th at p. 611.) The trial court noted that the report showed no unlawful detainer actions, but it commented that if the report had shown them, that would not have proved the plaintiff's bad character. The court held that the plaintiff's claim could not stand because it required extending ICRAA into CCRAA's domain, and thus would render ICRAA unconstitutionally vague and inconsistent with federal law. It dismissed the plaintiff's claim. (*Id.* at p. 612.)

The Court of Appeal in *Ortiz* viewed the issue as a "categorization challenge" and agreed with the trial court, reasoning that the Legislature intended consumer reports to fall under either ICRAA or CCRAA, but not both. (*Ortiz, supra,* 157 Cal.App.4th at p. 612.) The court held that the categorization challenge "arises not because unlawful detainer information is somehow paradoxical, but because the statutory scheme fails to set forth truly distinct categories. It presents a false dichotomy between creditworthiness and character." (*Id.* at pp. 612-613.) The court reasoned that because unlawful detainer information could relate to both a consumer's character and creditworthiness, and because ICRAA did not give adequate notice whether ICRAA or CCRAA governs for tenant screenings, ICRAA was unconstitutionally vague in this situation. (*Id.* at pp. 618–619.) First asks us to extend *Ortiz* to background checks in the employment context.

*Ortiz*'s holding was based on a categorical view of the two statutes as the court interpreted their legislative history—especially focusing on the fact that the Legislature modeled both statutes after FCRA. (15 U.S.C. § 1681 et seq.) *Ortiz* relied on the history of both acts as originally enacted, when ICRAA governed consumer reports that included character information obtained through personal interviews only. The court concluded that the Legislature created two separate

9

statutory schemes intended to cover either creditworthiness or character information, but not both. (*Ortiz, supra,* 154 Cal.App.4th at pp. 614-616; see *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 640 [companion case to *Ortiz* finding ICRAA unconstitutionally vague in the case of unlawful detainer action reports generated for tenant screening because it is "hopelessly uncertain" which statute should apply].)

As the Court of Appeal observed here, "[w]hen the Legislature amended ICRAA in 1998 to remove the limitation on [its scope] so it would govern all consumer reports that include character information, no matter how that information is obtained, it did not amend CCRAA to exclude from its scope reports that include character information obtained from sources other than personal interviews." Even after the amendment, "consumer reports that include character information obtained from a source other than personal interviews continue to be governed by CCRAA, as long as the reports contain information 'bearing on a consumer's credit worthiness, credit standing, or credit capacity.' (§ 1785.3, subd. (c).) But they *also* are governed by ICRAA under its clear and unambiguous language." The Court of Appeal found *Ortiz* inconsistent with our own precedent governing the interpretation of overlapping statutes.

In interpreting ICRAA and CCRAA, we agree with the Court of Appeal and find that potential employers can comply with both statutes without undermining the purpose of either. If an employer seeks a consumer's credit records exclusively, then the employer need only comply with CCRAA. An employer seeking other information that is obtained by any means must comply with ICRAA. In the event that any other information revealed in an ICRAA background check contains a subject's credit information and the two statutes thus overlap, a regulated party is expected to know and follow the requirements of both statutes, even if that requires greater formality in obtaining a consumer's credit

10

records (e.g., seeking a subject's written authorization to conduct a credit check if it appears possible that the information ultimately received may be covered by ICRAA). (See e.g., *Powell v. U.S. Cartridge Co.* (1950) 339 U.S. 497, 519.)

In a related argument, First asserts that because ICRAA and CCRAA cover the same subject matter, it is unclear which statute applies in the context of employment background checks. However, Connor's example of a report that would fall within the scope of both ICRAA and CCRAA is simply one that contains information bearing on both a consumer's creditworthiness and on her character. It seems to us that such a duality does not make legal compliance particularly difficult, much less impossible.

Indeed, the terms of the 2010 notice that First sent to Connor contemplated that the background check was an investigative consumer report within the scope of ICRAA. Part 1 of the Notice is titled, "INVESTIGATIVE CONSUMER REPORT DISCLOSURE AND RELEASE." The report's first sentence reads: "In connection with your employment or application for employment (including contract for services) an investigative consumer report and consumer reports, which may contain public record information, may be requested from USIS." The notice specifically states that the reports may include "information relating to your character, general reputation, educational background, or any other information about you which may reflect upon your potential for employment gathered from any individual, organization, entity, agency, or other source which may have knowledge concerning any such items of information." By its terms, the 2010 notice conveys that First understood that the background check would include information about Connor's character, thus placing it within the scope of ICRAA. Additionally, the check box portion of the notice cites to ICRAA, Civil Code

11

section 1786.22, and provides details about the consumer's statutory rights, again indicating that First had notice that it must comply with ICRAA.

First alternatively contends that if the Legislature intended ICRAA to apply to employment screening reports that previously were exclusively subject to CCRAA, it would have amended CCRAA to conform to this understanding. The pertinent portion of CCRAA, however, speaks in limiting language, rather than language of authorization. (See Civ. Code, § 1785.11, subd. (a)(3)(B) ["A consumer credit reporting agency shall furnish a consumer credit report *only* under the following circumstances: [¶] . . . [¶] (3) To a person whom it has reason to believe: [¶] . . . [¶] (B) Intends to use the information for employment purposes" (italics added)].) Accordingly, there was no need for the Legislature to amend CCRAA in response to the changes it made to ICRAA.

Only ICRAA governs reports obtained from personal interviews that bear solely on an individual's character. (See § 1785.3, subd. (c)(5).) Meanwhile, only CCRAA, which limits its applicability to information gathered and used for employment purposes, governs credit information obtained directly from creditors for developing a consumer's credit record. (§ 1785.11, subd. (a)(3)(B) [limiting access to consumer credit reports to persons the consumer credit reporting agency has reason to believe "intends to use the information for employment purposes"].) Any partial overlap between the statutes does not render one superfluous or unconstitutionally vague. They can coexist because both acts are sufficiently clear (cf. *Batchelder*, *supra*, 442 U.S. at p. 123), and each act regulates information that the other does not (see *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred International, Inc.* (2001) 534 U.S. 124, 144 [when considering statutory protections for plant varieties, court may "give effect to two statutes that overlap, so long as each reaches some distinct cases"]).

12

To the extent that *Ortiz v. Lyon Management Group*, *Inc.*, *supra,* 157 Cal.App.4th 604, and its companion case *Trujillo v. First American Registry Inc.*, *supra,* 157 Cal.App.4th 628 hold otherwise, we disapprove them.

## CONCLUSION

The background check that First conducted here is an investigative consumer report under ICRAA because it reported on Connor's "character, general reputation, personal characteristics, or mode of living." (§ 1786.2, subd. (c).) That CCRAA also applies here does not exempt First from the requirement that it obtain Connor's written authorization under ICRAA before conducting or procuring a background investigation. (§1786.16, subd. (a)(2)(C).) For the foregoing reasons, we affirm the Court of Appeal judgment and remand the matter for further proceedings consistent with this opinion.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C.J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**ROBIE, J.\***

_____

\* Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Connor v. First Student, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 239 Cal.App.4th 526
**Rehearing Granted**

_____

**Opinion No.** S229428
**Date Filed:** August 20, 2018

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** John Shepard Wiley, Jr.

_____

**Counsel:**

Sundeen Salinas & Pyle, Hunter Pyle Law, Hunter Pyle, Tanya Tambling, Rachel Evans, Chad Saunders; Lewis, Feinberg, Renaker, Lee & Jackson, Lewis, Feinberg, Lee & Jackson, Feinberg, Jackson, Worthman & Wasow, Todd F. Jackson and Catha Worthman for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Nicklas A. Akers, Assistant Attorney General, Michele Van Gelderen and Alicia K. Hancock, Deputy Attorneys General, for Attorney General as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Offices of Craig Davis and Craig Davis for A New Way of Life Reentry Project, Bay Area Legal Aid, Bet Tzedek Legal Services, Center for Employment Opportunities, Collateral Consequences Resource Center, Community Service Society of New York, Drug Policy Alliance, East Bay Community Law Center, Ella Baker Center for Human Rights, Equal Rights Advocates, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, Legal Action Center, Legal Aid Foundation of Los Angeles, Legal Aid of Marin, Legal Services for Prisoners with Children, Legal Services of Northern California, National Consumer Law Center, Neighborhood Legal Services of Los Angeles County, North Carolina Justice Center, Public Counsel, Public Interest Law Project, Public Law Center, Root & Rebound, Rubicon Programs and Western Center on Law and Poverty as Amici Curiae on behalf of Plaintiff and Appellant.

Seth E. Mermin, Thomas Bennigson and Jonathan S.M. Francis for California Reinvestment Coalition, Consumer Action, Consumers for Auto Reliability and Safety, Housing and Economic Rights Advocates, National Association of Consumer Advocates, National Employment Law Project, National Housing Law Project and Public Good Law Center as Amici Curiae on behalf of Plaintiff and Appellant.

Littler Mendelson, Benjamin A. Emmert and Ronald A. Peters for Defendants and Respondents.

Covington & Burling, Andrew M. Smith and Simon J. Frankel for the Consumer Data Industry Association as Amicus Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Hunter Pyle
Hunter Pyle Law
428 13th Street, 11th Floor
Oakland, CA  94612
(510) 663-9240

Seth E. Mermin
Public Good Law Center
3130 Shattuck Avenue
Berkeley, CA  95705
(510) 393-8254

Ronald A. Peters
Littler Mendelson
50 West San Fernando Street, 14th Floor
San Jose, CA  95113-2431
(408) 998-4150