Filed 3/30/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| RONALD BERNUY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BRIDGE PROPERTY<br>MANAGEMENT COMPANY,<br><br>    Defendant and Respondent. | A163240<br><br>(City & County of San Francisco<br> Super. Ct. No. CGC-19-579278) |

The Investigative Consumer Reporting Agencies Act (ICRAA; Civ. Code, §1786 et seq.)[1] is a consumer protection measure that mandates certain disclosures for investigative consumer reports, which as relevant here are often used by landlords to make decisions regarding consumers who apply for housing.  ICRAA requires the adoption of "reasonable procedures" for providing consumer information "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization" of their information.  (§ 1786, subd. (f).)  Any investigative consumer reporting agency or user of information that fails to comply with the requirements of ICRAA is liable to the affected consumer for any actual damages or $10,000, whichever sum is greater.  (§ 1786.50, subd. (a)(1).)

---

[1]    All unlabeled statutory references are to this code.

1

In 2015, a conflict developed in the Courts of Appeal over whether ICRAA was unconstitutionally vague and therefore unenforceable. In *First Student Cases* (2018) 5 Cal.5th 1026 (*First Student*), the California Supreme Court resolved the conflict by upholding the constitutional validity of ICRAA and disapproving two earlier Court of Appeal decisions that concluded to the contrary.

This action filed by plaintiff Ronald Bernuy is one of 27 consolidated actions seeking damages against defendant Bridge Property Management Company (BPMC) for its commission of ICRAA violations in 2017. By stipulation and court order, Bernuy's action has been designated a "bellwether" case for purposes of adjudicating the following issues: (1) whether the California Supreme Court's 2018 decision in *First Student* amounted to a subsequent change in the law that relieves BPMC of liability for its ICRAA violations; and (2) whether certain plaintiffs' ICRAA claims are time-barred under the applicable two-year statute of limitations or whether the limitations period was tolled by the pendency of a putative class action. The trial court granted summary adjudication in favor of BPMC on both of these issues.

We conclude the *First Student* decision is properly given retroactive effect so as to subject BPMC to liability for its ICRAA violations. But we also conclude that the policy considerations underlying the class action tolling doctrine do not support its application in Bernuy's case and that therefore his ICRAA claim is time-barred. Thus, while we hold the trial court erred in refusing retroactive application of the *First Student* decision, we will affirm the court's judgment in favor of BPMC on statute of limitations grounds.

## FACTUAL AND PROCEDURAL BACKGROUND

The following undisputed facts are taken largely from the trial court's order on the parties' cross-motions for summary adjudication.

BPMC manages and operates an affordable housing complex in Chino known as Ivy II at College Park Apartments (Ivy II). On May 24, 2017, BPMC received Bernuy's " 'Application for Residency' " for a unit in Ivy II. As part of the application process, Bernuy signed a " 'Release of Information' " form, and at some point by August 29, 2017, BPMC used the release form to obtain " 'investigative consumer reports' " about Bernuy from a company called National Tenant Network (NTN). BPMC obtained at least five investigative consumer reports about Bernuy without complying with ICRAA's legal requirements. These reports included: (1) a County Criminal Search report, dated August 9, 2017; (2) a multistate Criminal Search report, dated August 29, 2017; (3) an Office of Foreign Asset Control Terrorist Search report, dated August 9, 2017; (4) a Tenant Performance Profile report, dated August 9, 2017; and (5) a Decision Point Plus report, dated August 9, 2017.

On May 22, 2019, other Ivy II applicants who are not parties to this litigation filed a federal class action lawsuit called *Limson v. Bridge Property Management Company* (N.D.Cal. 2019) 416 F.Supp.3d 972 (*Limson*). As relevant here, the *Limson* class action complaint alleged that BPMC violated ICRAA for the same reasons alleged in the instant lawsuit. On December 9, 2019, the *Limson* plaintiffs voluntarily dismissed their ICRAA claims, apparently because they were unable to meet the $5 million amount-in-controversy requirement for class actions in federal court.[2]

---

[2] We grant BPMC's request for judicial notice of four case documents from the *Limson* action. Though the trial court made no ruling on BPMC's

Meanwhile, on September 16, 2019, Bernuy filed this action against BPMC alleging causes of action for violation of ICRAA, unfair business practices, declaratory relief, and invasion of privacy. Bernuy's complaint seeks "general and special damages in an amount to be determined by a jury for each violation" of his rights, as well as statutory damages, under ICRAA.

BPMC applied for trial court designation of Bernuy's case as complex, seeking to relate the action to 27 other lawsuits filed against BPMC for alleged ICRAA violations. The trial court granted a complex designation and consolidated Bernuy's case with the others for pretrial purposes.[3] Thereafter Bernuy's action was selected as the "bellwether case" for a hearing on cross-motions for summary adjudication addressing a range of issues common to the plaintiffs in the consolidated cases.

As relevant here, the trial court ultimately issued a decision concluding BPMC could not be held liable for ICRAA violations committed before the California Supreme Court upheld ICRAA's constitutional validity in *First Student*, *supra*, 5 Cal.5th 1026. In the trial court's view, BPMC had "reasonably relied" on a pair of 2007 Court of Appeal decisions that had invalidated ICRAA as unconstitutionally vague. The court also determined that Bernuy's ICRAA claim was filed after the applicable statute of

---

request for judicial notice of these documents in the proceedings below, the court referred to such matters in its decision. However, we deny BPMC's request for judicial notice of court documents reflecting that other plaintiffs had filed ICRAA lawsuits against BPMC in San Bernardino County before the *Limson* class action was filed. These documents were not before the trial court, and they are irrelevant to our disposition of the case. (See *People v. Rowland* (1992) 4 Cal.4th 238, 268 fn. 6.)

[3]     One of the cases was voluntarily dismissed, leaving a total of 27 consolidated cases currently intact.

limitations period had run and that the *Limson* class action did not toll the limitations period in his case.

Pursuant to the parties' stipulation, the trial court severed Bernuy's action from the consolidated cases and dismissed all causes of action with prejudice so that Bernuy could seek expedited appellate review of the court's summary adjudication order on the retroactivity and statute of limitations issues. The court stayed all the consolidated cases pending the appellate decision in this case. This appeal followed.

## DISCUSSION

In enacting ICRAA, the Legislature emphasized the need to ensure that "investigative consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." (§ 1786, subd. (b).) As relevant here, ICRAA includes the following liability provision to encourage compliance with its terms: "(a) An investigative consumer reporting agency or user of information that fails to comply with any requirement under this title with respect to an investigative consumer report is liable to the consumer who is the subject of the report in an amount equal to the sum of all the following: [¶] (1) Any actual damages sustained by the consumer as a result of the failure or, except in the case of class actions, ten thousand dollars ($10,000), whichever sum is greater." (§ 1786.50, subd. (a)(1).)

This case presents two questions. First, did the trial court erroneously rule that the 2018 decision in *First Student* should not be given retroactive effect? Second, did the court err in holding that the *Limson* class action did not toll the applicable limitations period? We address these issues in order.

5

## A. Retroactivity of the *First Student* Decision

### 1. *Additional background facts*

The material facts are undisputed. In 2007, a division of the Fourth District Court of Appeal ruled that ICRAA was unconstitutionally vague in *Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604 (*Ortiz*), a case that involved tenant screening reports. Specifically, the appellate court held that ICRAA failed to provide adequate notice as to its application because persons of reasonable intelligence could not readily determine whether the unlawful detainer information implicated in tenant screening reports was " 'character' " information subject to ICRAA or " 'creditworthiness' " information governed by the Consumer Credit Reporting Agencies Act (CCRAA; § 1785.1 et seq.). (*Ortiz*, at p. 611.) On the same day, the same division issued another opinion reiterating and applying *Ortiz*'s ICRAA analysis in a companion case called *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628 (*Trujillo*). (See *Trujillo*, at p. 640.) The California Supreme Court denied petitions for review and requests for depublication of these companion cases. (*Ortiz* (*Rae F.*) *v. Lyon Management Group, Inc.* (Mar. 12, 2008, No. S159802) __ Cal.4th __ [2008 Cal. Lexis 3069] *1; *Trujillo* (*Robert*) *v. First American Registry, Inc.* (Mar. 12, 2008, No. S159821) __ Cal.4th __ [2008 Cal. Lexis 2940] *1.)

A few years later, current and former bus drivers filed a class action lawsuit alleging the defendant conducted employee background checks on them in 2010 that violated ICRAA. (See *First Student*, *supra*, 5 Cal.5th at pp. 1030, 1031.) In 2015, a division of the Second District Court of Appeal issued a published opinion in *Connor v. First Student, Inc.* (*Connor*),[4]

---

[4]     After the California Supreme Court granted review of *Connor*, the name of the case was changed to *First Student Cases*.

concluding that, "although ICRAA and CCRAA might overlap to some degree, there is no 'positive repugnancy' between them that would render ICRAA unconstitutional." (*First Student*, at p. 1032, quoting the Court of Appeal's *Connor* opinion.) Thus, the appellate court held, agencies that provide reports " 'can comply with each act without violating the other.' " (*Ibid*.) Because the 2015 opinion squarely rejected *Ortiz*'s analysis that ICRAA is unconstitutionally vague, the California Supreme Court granted review of the case in order to resolve the appellate court conflict. (See *First Student*, at p. 1030.) Under the California Rules of Court in effect at the time, the grant of review resulted in the automatic depublication of the *Connor* decision. (See Cal. Rules of Ct., former rule 8.1115.)[5]

On August 20, 2018, the California Supreme Court issued its opinion in *First Student, supra*, 5 Cal.5th 1026. The high court began by observing that both ICRAA and the modern version of CCRAA were enacted in 1975 (*First Student*, at p. 1032) and that the most recent statutory amendment occurred in 1998 when the Legislature amended ICRAA to "expand the statute's scope to include character information obtained under CCRAA or 'obtained through any means' " (*First Student*, at pp. 1033–1034). Describing the "threshold question" as "one of statutory interpretation," the court reasoned that if ICRAA and CCRA "are sufficiently clear to indicate that both apply" to a background report, then "neither statute is vague." (*First Student*, at p. 1034.) In affirming the Court of Appeal judgment, the court agreed that,

---

[5]     All further references to rules are to the California Rules of Court. Reference to former rule 8.1115's rule of automatic depublication of a published opinion of a Court of Appeal upon a grant of review may be found at https://www.courts.ca.gov/documents/Rules-160601.pdf (as of Mar. 30, 2023). Effective July 1, 2016, the California Rules of Court were amended to eliminate automatic depublication when the California Supreme Court grants review of the case.

despite any partial overlap between ICRAA and CCRAA, the two statutes "can coexist because both acts are sufficiently clear [citation], and each act regulates information that the other does not." (*First Student*, at p. 1038.) Observing that "potential employers can comply with both statutes without undermining the purpose of either" (*id*. at p. 1036), the California Supreme Court disapproved the *Ortiz* and *Trujillo* decisions to the extent they held otherwise (*First Student*, at p. 1038). The matter was then remanded "for further proceedings" consistent with the court's opinion. (*Ibid*.)

    2. *Analysis*

    " ' "The general rule that judicial decisions are given retroactive effect is basic in our legal tradition." ' " (*Frlekin v. Apple Inc.* (2020) 8 Cal.5th 1038, 1057 (*Frlekin*).) However, exceptions are sometimes made in the interests of " 'fairness and public policy.' " (*Ibid*.) In discussing when one of its own decisions might be excepted from retroactive effect, the California Supreme Court has emphasized that reliance on the prior rule or decision must be justified: "Although prospective application may be appropriate in some circumstances when our decision alters a settled rule upon which parties justifiably relied, ordinarily this is only when a decision constitutes a ' "clear break" ' with decisions of *this* court or with practices we have sanctioned by implication, or when we 'disapprove[] a longstanding and widespread practice expressly approved by a near-unanimous body of lower-court authorities.' " (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 967 (*Grafton Partners*).) A party seeking to avoid the general rule of retroactivity shoulders the burden to demonstrate its justifiable reliance on the prior rule. (See *In re Retirement Cases* (2003) 110 Cal.App.4th 426, 443 (*Retirement Cases*).)

8

The California Supreme Court has repeatedly cautioned that a single erroneous Court of Appeal decision "is hardly the kind of 'uniform body of law that might be justifiably relied on.'" (*Grafton Partners*, *supra*, 36 Cal.4th at p. 967; see *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 536 ["it is difficult to see how a single decision by an inferior court could provide a basis to depart from the assumption of retrospective operation"].) Similarly, a conflict among the Courts of Appeal "bars a claim of justifiable reliance because '. . . there was no clear rule on which anyone could have justifiably relied.'" (*Burckhard v. Del Monte Corp.* (1996) 48 Cal.App.4th 1912, 1917.)

With these principles in mind, we assess whether BPMC met its burden to demonstrate justifiable reliance on the *Ortiz* and *Trujillo* decisions so as to bar retroactive operation of the *First Student* decision to its ICRAA violations.

As a preliminary matter, we seriously doubt that the *Ortiz* and *Trujillo* decisions, taken together, are properly viewed as having established " 'a longstanding and widespread practice expressly approved by a near-unanimous body of lower-court authorities' " or as constituting the requisite " 'uniform body of law' " that the California Supreme Court would view as defeating the general rule of retroactivity. (*Grafton Partners*, *supra*, 36 Cal.4th at p. 967.) After all, *Ortiz* and *Trujillo* were companion decisions issued by the same court on the same day, and they can hardly be said to represent a long line of settled lower court authority.[6] Moreover, the circumstance that review was denied in those cases did not imply California

---

[6] The record contains no indication that investigative consumer reporting agencies and users of consumer information reports were routinely failing to comply with ICRAA's requirements between the act's inception in 1975 or its amendment in 1998, and the time when *Ortiz* and *Trujillo* were decided in 2007.

9

Supreme Court approval of their holdings, as it is well established that " 'a denial of a petition for review is not an expression of opinion of the Supreme Court on the merits of the case.' " (*People v. Saunders* (1993) 5 Cal.4th 580, 592, fn. 8.)

More to the point here, BPMC committed the 2017 ICRAA violations at issue after appellate conflict over the constitutional validity of ICRAA had ripened. The Court of Appeal's 2015 published opinion in *Connor* disagreed with *Ortiz* and *Trujillo*, which prompted the California Supreme Court to grant review in *Connor* to resolve the conflict. Thus, while the California Supreme Court did not issue its *First Student* opinion until 2018, its grant of review in 2015 made clear that the question of ICRAA's constitutional validity was an open one that required an authoritative opinion from the California Supreme Court. The only reasonable inference to be drawn from this record is that BPMC was not justified in relying on *Ortiz* and *Trujillo* when it violated ICRAA in 2017. (See *Grafton Partners*, *supra*, 36 Cal.4th at p. 967; *Doe v. Marten* (2020) 49 Cal.App.5th 1022, 1029 [whether a party's reliance was reasonable is a question of fact for the factfinder " 'unless reasonable minds could reach only one conclusion based on the evidence' "].) Accordingly, the trial court's conclusion to the contrary was an abuse of discretion.

BPMC relies on the circumstance that, prior to the California Supreme Court's decision in *First Student*, nearly every federal district court that considered the issue apparently followed *Ortiz* and *Trujillo* in holding that ICRAA was unconstitutional. (But see *Cunha v. IntelliCheck, LLC* (N.D.Cal. 2017) 254 F.Supp.3d 1124, 1135 [declining to follow *Ortiz* due to its inconsistency with California Supreme Court and United States Supreme Court precedent regarding interpretation of overlapping statutes].)

Emphasizing the point that federal courts "follow decisions of the California Court of Appeal unless there is convincing evidence that the California Supreme Court would hold otherwise" (*Carvalho v. Equifax Information Services, LLC* (9th Cir. 2010) 629 F.3d 876, 889), BPMC contends these federal cases established the " 'near-unanimous body of lower-court authorities' " that justified BPMC's reliance on the state of the law predating *First Student*. (*Grafton Partners*, *supra*, 36 Cal.4th at p. 967.)

Federal decisions "have limited relevance to whether our Supreme Court's decision, which interprets a California statute, should have retroactive application." (*Retirement Cases*, *supra*, 110 Cal.App.4th at p. 465.) But even if we assume that federal district court reliance on a single pair of companion Court of Appeal decisions bears consideration in determining whether an authoritative California Supreme Court decision should be restricted to prospective effect, the assumption lends no meaningful support to BPMC's position. Whether one or 20 federal courts opted to follow *Ortiz* and *Trujillo*, it was clear from the Court of Appeal's *Connor* decision that 1,200 plaintiffs in coordinated state court cases were pressing their ICRAA claims despite the holdings in *Ortiz* and *Trujillo* (see *First Student*, *supra*, 5 Cal.5th at p. 1030, fn. 2), thus reflecting that the issue was a matter of continuing litigation in California courts. When review of the *Connor* case was granted in 2015, BPMC and others subject to regulation under ICRAA were on notice that the *Ortiz* and *Trujillo* holdings were potentially subject to disapproval or other modification by our state's highest court, regardless of the federal courts' assessment of the matter.

BPMC also suggests the trial court did not abuse its discretion in according only prospective application to *First Student*, *supra*, 5 Cal.5th 1026, because the court was bound by principles of stare decisis to follow the

11

published decisions in *Ortiz* and *Trujillo*. Specifically, BPMC contends the trial court was barred from relying on the Court of Appeal's *Connor* decision because it had been depublished under former rule 8.1115. (See *ante*, fn. 5; rule 8.1115(a) [nonpublished Court of Appeal decision "must not be cited or relied on by a court or a party in any other action"].) As BPMC sees it, the trial court correctly concluded that where a depublished opinion represents the sole case creating a split of authority, its depublication " 'undoes any split.' "

We accept that trial courts were obligated to follow *Ortiz* and *Trujillo* until those decisions were disapproved. But that circumstance did not detract from the reality that the grant of review in *Connor* put agencies and users subject to ICRAA on reasonable notice that the issue of ICRAA's validity was an open one and that *Ortiz* and *Trujillo* were being examined in light of another Court of Appeal decision that disagreed with their holdings.[7] As already explained, it is highly unlikely the California Supreme Court would view the single pair of companion cases as defeating the general rule of retroactivity, especially when BPMC's noncompliance with ICCRA occurred after the high court granted review to resolve the conflict that had developed in the Courts of Appeal.

BPMC next points to the California Supreme Court's observation that " 'fairness and public policy sometimes weigh against the general rule that judicial decisions apply retroactively.' " (*Frlekin, supra*, 8 Cal.5th at p. 1057.) Here, BPMC contends, those considerations strongly favor prospective application of *First Student, supra*, 5 Cal.5th 1026.

---

[7]     We need not opine as to whether BPMC's contention might have more force had the California Supreme Court depublished the Court of Appeal's *Connor* decision without granting review—that is not what happened.

We are not convinced. " 'Considerations of fairness would measure the reliance on the old standards by the parties or others similarly affected, as well as "the ability of litigants to foresee the coming change in the law.' " (*Retirement Cases*, *supra*, 110 Cal.App.4th at p. 454.) In *Frlekin*, the California Supreme Court declined to depart from the general rule of retroactivity because the defendant could not " 'claim reasonable reliance on settled law.' " (*Frlekin*, *supra*, 8 Cal.5th at p. 1057.) Similarly, and for the reasons already discussed, BPMC cannot claim reasonable reliance on settled law. Thus, *Frlekin* and the instant case stand in contrast to those cases in which the California Supreme Court denied retroactive effect of their decisions where considerations of fairness and public policy included the circumstance that the party resisting retroactivity established reasonable or justified reliance on prior California case law. (E.g., *Williams & Fickett v. County of Fresno* (2017) 2 Cal.5th 1258, 1282 [language in prior California Supreme Court decision "was unequivocal, lending itself to reasonable reliance by plaintiff and others"]; *Claxton v. Waters* (2004) 34 Cal.4th 367, 377–379 [decision changed evidentiary rule as stated in two Court of Appeal decisions and a prior California Supreme Court decision]; *Woods v. Young* (1991) 53 Cal.3d 315, 330 [unanimous conclusion of seven published Court of Appeal decisions regarding statutory tolling "established a settled rule upon which plaintiff could reasonably rely"].)

BPMC further suggests that fairness and public policy strongly favor prospective-only application of ICRAA's civil remedies provision because the evidence establishes that Bernuy suffered no actual damages and that BPMC did not mishandle, misuse, or profit from any consumer's private information. BPMC also asserts the $10,000 in authorized statutory damages represents "a massive sum" to a non-profit entity such as itself that acted fully in

13

accordance with published case law that found ICRAA unconstitutionally vague.  We are not persuaded.

We have already explained why BPMC has not established justifiable reliance on *Ortiz* and *Trujillo*.  And to the extent BPMC believes that a $10,000 statutory penalty is unfair when no actual damage is shown or is too much when a non-profit entity fails to comply with ICRAA requirements, those are policy matters for the Legislature to decide.  Indeed, BPMC's contentions on this point largely reflect its substantive disagreement with the damages provision of ICRAA and provide no basis for limiting *First Student* to prospective application.

Finally, we observe *Frlekin* expressed a public policy concern that bears emphasizing here.  There, the California Supreme Court held that certain activity was compensable as " 'hours worked' " and therefore within the statutory and wage order penalty provisions.  (*Frlekin*, *supra*, 8 Cal.5th at p. 1057.)  In addressing the retroactivity of its holding, *Frlekin* observed, "we have declined to restrict our decisions to prospective application when doing so 'would, in effect, negate the civil penalties, if any, that the Legislature has determined to be appropriate in this context, giving employers a free pass as regards their past conduct' and hence 'would exceed our appropriate judicial role.' " (*Ibid*.)  Inasmuch as ICRAA has been found "sufficiently clear" and not "unconstitutionally vague" (*First Student*, *supra*, 5 Cal.5th at p. 1038), we take our cue from *Frlekin* and decline to give users of consumer information such as BPMC " 'a free pass' " with respect to their liability for ICRAA violations.  (*Frlekin*, at p. 1057.)[8]

---

[8]    In *Moss v. Superior Court* (1998) 17 Cal.4th 396, the California Supreme Court declined to give retroactive effect to its holding that contempt sanctions can be imposed on a parent whose inability to pay child support is the result of a willful failure to seek employment.  (*Id*. at pp. 428–430.)  *Moss*

14

## B. Statute of Limitations

Section 1786.52 provides a two-year statute of limitations for ICRAA claims. There appears no dispute that the statutory period began to run on August 14 and/or September 1, 2017 or that Bernuy filed the instant action on September 16, 2019. This means that Bernuy's action is untimely unless the limitations period had been tolled. To determine whether the trial court correctly held that the federal *Limson* class action did not toll the limitations period, we turn to the seminal decisions in *American Pipe & Construction Co. v. Utah* (1974) 414 U.S. 538 (*American Pipe*) and *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103 (*Jolly*).

In *American Pipe*, the State of Utah brought a putative class action on behalf of its public agencies and others, claiming the defendants conspired to rig steel and concrete pipe prices in violation of the Sherman Act. (*American Pipe*, *supra*, 414 U.S. at p. 541.) The district court ultimately denied class certification for failure to satisfy the numerosity requirement of rule 23(a)(1) of the Federal Rules of Civil Procedure. (*American Pipe*, at p. 543.) The public agencies who were alleged as class members then filed motions to intervene, which the district court denied on statute of limitations grounds. (*Id*. at p. 544.) The United States Supreme Court unanimously agreed with the circuit court that the district court had erred: "We hold that in this posture, at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute for all purported members of the class who make

does not compel a contrary conclusion here. Unlike the situation in *Moss*, the *First Student* court did not reverse a century of settled precedent. Nor will retroactive application of *First Student* subject BPMC to criminal contempt.

15

timely motions to intervene after the court has found the suit inappropriate for class action status." (*Id.* at pp. 552–553.)

As relevant here, *Jolly* addressed whether the filing of a class action seeking declaratory relief against manufacturers of an allegedly defective drug (the *Sindell* class action) served to toll the statute of limitations for members of the putative class, including the plaintiff in *Jolly*. (See *Jolly*, *supra*, 44 Cal.3d at p. 1120.) The California Supreme Court began its analysis by observing that "in the absence of controlling state authority, California courts should utilize the procedures of rule 23 of the Federal Rules of Civil Procedure." (*Jolly*, at p. 1118.) Drawing from *American Pipe*, the *Jolly* court identified "protection of the class action device" and "effectuation of the purposes of the statute of limitations" as "two major policy considerations" underlying the high court's tolling rule. (*Jolly*, at p. 1121.)

With regard to protecting the class action device, the *Jolly* court explained: "In cases where class certification is denied for what the high court characterized as 'subtle factors,' unforeseeable by class members, a rule that failed to protect putative class members from the statute of limitations after denial of certification would induce potential class members to 'file protective motions to intervene or to join in the event that a class was later found unsuitable,' depriving class actions 'of the efficiency and economy of litigation which is a principal purpose of the procedure.' " (*Jolly*, *supra*, 44 Cal.3d at p. 1121, quoting *American Pipe*, *supra*, 414 U.S. at p. 553.) In such situations, tolling the statute of limitations upon commencement of a putative class action promotes the goal of efficiency because each class member would otherwise need to file an individual lawsuit prior to the expiration of that class member's own limitations period.

16

As for effectuating the purposes of the statute of limitations, the *Jolly* court reiterated *American Pipe*'s observation that limitation periods serve to " 'ensur[e] essential fairness to defendants" and to "bar[] a plaintiff who has ' "slept on his rights." ' " (*Jolly*, *supra*, 44 Cal.3d at p. 1121, quoting *American Pipe*, *supra*, 414 U.S. at p. 554; see also *Crown, Cork & Seal Co., Inc. v. Parker* (1983) 462 U.S. 345, 352 ["[l]imitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights"].) These purposes would not be violated by tolling where commencement of the class suit " 'notifie[d] the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.' " (*Crown*, at p. 353.) The *Jolly* court also referenced Justice Blackmun's caution that *American Pipe* " 'must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights.' " (*Jolly*, at p. 1124, quoting *American Pipe*, at p. 561 (conc. opn. of Blackmun, J.).)

Weighing both of these policy considerations, the *Jolly* court declined to extend the class action tolling doctrine of *American Pipe* to the case before it. In particular, the court found it significant that the *Sindell* class action had not sought to certify the class as to personal injury claims, which was the gravamen of the plaintiff's untimely action. (*Jolly*, *supra*, 44 Cal.3d at p. 1123.) Thus, "the differences in issues of fact and law" presented in the two actions made it evident that the class claim in *Sindell* did not put the defendants in *Jolly* on notice of the plaintiff's personal injury allegations "within the statutory period of limitation so that [the defendants] might

17

prepare their defense."[9] (*Jolly*, at pp. 1123–1124.) In sum, "[b]ecause the *Sindell* complaint never put defendants on notice that personal injury damages were being sought on a class basis, it would be unfair to defendants to toll the statute of limitations on such personal injury actions." (*Id.* at p. 1125.)

In assessing the propriety of applying *American Pipe*'s tolling doctrine in the instant case, the damages provision in ICRAA weighs significantly in our analysis. Under ICRAA, an investigative consumer reporting agency or user of information that fails to comply with the act's requirements is liable to the affected consumer for any actual damages or $10,000, whichever sum is greater, but the act expressly precludes the recovery of the statutory $10,000 amount in class actions. (§ 1786.50, subd. (a)(1).) As relevant here, the *Limson* class action was brought on behalf of a putative class consisting of Ivy II applicants, alleging that BPMC violated ICRAA by getting investigative consumer reports about the putative class members, and the complaint sought recovery on behalf of the putative class for actual damages, or in the alternative, for statutory damages in the amount of $10,000. But given section 1786.50's express bar on class action recovery of statutory

---

[9]    As described by the *Jolly* court, the named plaintiff in the *Sindell* class action sought damages for specific personal injury she "suffered as a result of her mother's ingestion of DES during pregnancy." (*Jolly, supra,* 44 Cal.3d at p. 1120.) In the cause of action relating to class claims, the *Sindell* action "sought only declaratory relief and an order directing defendants to publicize the dangers of DES and the necessity of medical evaluations and to fund the establishment and maintenance of clinics to provide free examinations to the DES daughters." (*Ibid.*) In contrast, the plaintiff's action for damages in *Jolly* "put[] into issue the prenatal treatment of her mother, the specific form of DES prescribed (e.g., tablet, capsule), the dosage taken, her mother's obstetrical history and many other issues necessarily involved in proving causation, damages and defenses." (*Id.* at p. 1123.)

damages, it was clear from the outset that statutory damages could not be awarded in the *Limson* class action.

We first examine whether application of tolling during the pendency of the *Limson* action serves to protect the class action device. (*Jolly*, *supra*, 44 Cal.3d at p. 1121.) Here, the patent unavailability of the class action device as a means for Ivy II applicants who suffered no significant actual damages but simply seek to recover the minimum ICRAA damages of $10,000 stands in sharp contrast to those situations in which tolling may be appropriate where unforeseeable " 'subtle factors' " may lead to denial of class certification. (*Jolly*, at p. 1121, quoting *American Pipe*, *supra*, 414 U.S. at p. 553.) As *Jolly* and *American Pipe* indicate, the possibility that certification could be denied based on subtle factors theoretically induces potential class members to file " 'protective' " individual actions despite the pendency of the class action, which in turn deprives the class action device " 'of the efficiency and economy of litigation which is a principal purpose of the procedure.' " (*Jolly*, at p. 1121; see *Crown, Cork*, *supra*, 462 U.S. at p. 352 [*American Pipe* extends to class members filing separate actions].) But ICRAA itself provided certainty that the district court could not and would not grant certification of a class composed of Ivy II applicants seeking statutory damages of $10,000 instead of actual damages. Consequently, such applicants had no option but to file individual actions to recover such damages, and their doing so would have had no material impact on the efficiency or economies of the pending *Limson* class action. In other words, the principal objectives of the class action device to promote efficiency and economy are not undermined when plaintiffs file individual actions because they have no other alternative for pursuing their claims and remedies.

19

We next assess whether application of the tolling doctrine under the present circumstances serves to effectuate the policy purposes of the statute of limitations. Strictly speaking, we cannot say the policy of " 'ensuring essential fairness to defendants' " would be frustrated by applying the tolling doctrine in this matter. (*Jolly*, *supra*, 44 Cal.3d at p. 1121, quoting *American Pipe*, *supra*, 414 U.S. at p. 554.) After all, Bernuy was a member of the putative class in *Limson* and here he has pleaded the same damages for the same alleged violations involved in that action. Consequently, the *Limson* class action provided BPMC with ample notice of the " 'substantive claims being brought against them,' " as well as the " 'number and generic identities of the potential plaintiffs.' " (*Jolly*, *supra*, 44 Cal.3d at p. 1121, quoting *American Pipe*, at p. 555.)

Nonetheless, we remain mindful that limitation periods are also intended "to prevent plaintiffs from sleeping on their rights." (*Crown, Cork*, *supra*, 462 U.S. at p. 352; see *Jolly*, *supra*, 44 Cal.3d at p. 1121.) Given ICRAA's express prohibition on class recovery of the $10,000 minimum damages amount, Ivy II applicants who were not prepared to prove actual damages in excess of $10,000 had no reasonable basis for relying on the *Limson* action to toll the statute of limitations for their ICRAA claims. Instead, they had every incentive to file their individual actions within the two-year limitations period in order to preserve their rights, and indeed, they had no other option. Under these circumstances, tolling the statute of limitations for these particular Ivy II applicants would impermissibly reward them for "sleeping on their rights." (*Crown, Cork*, at p. 352.)

The remaining question in this matter is whether the trial court's grant of summary adjudication on Bernuy's ICRAA cause of action was in error because his complaint purports to seek actual damages resulting from

BPMC's ICRAA violations and "general and special damages in an amount to be determined by a jury for each violation of [his] rights." Referring generally to case law recognizing that " 'actual damages consist of both general and special damages' " (*Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1601), Bernuy contends that damages for pain, suffering, and emotional distress are paradigmatic examples of general damages. Significantly, however, Bernuy admits he has incurred no out-of-pocket damages from BPMC's conduct, and his counsel acknowledged in argument to the trial court that Bernuy experienced no actual damage. Bernuy cites no authority indicating that an award of emotional distress damages in excess of $10,000 would be appropriate on this record.[10] Accordingly, the trial court did not err in granting summary adjudication on Bernuy's ICRAA cause of action.[11]

---

[10] We note Bernuy's counsel indicated to the trial court that some of the other plaintiffs in the consolidated cases experienced actual damage from problematic reports, though such damage did not amount to $10,000. To the extent Bernuy's counsel was attempting to preserve the claims of the plaintiffs whose actual damages would exceed $10,000 if their out-of-pocket damages were combined with emotional distress damages, we express no opinion as to whether summary adjudication would be appropriate in such cases.

[11] Having concluded that Bernuy's ICRAA claims are time-barred for the reasons above, we need not and do not address BPMC's other arguments for rejecting the tolling doctrine, including its contentions that: (1) because Bernuy filed his individual action while the *Limson* class action was pending, he did not actually rely on the pendency of the class action to preserve his ICRAA claims; (2) the circumstance that 48 plaintiffs filed individual complaints based on the same alleged ICRAA violations by BPMC shows that many people believed a class action was inappropriate and that denial of certification foreseeable; and (3) the *Limson* class action did not provide notice to BPMC of Bernuy's potential ICRAA claims because BPMC had prior notice of potential and actual ICRAA claims well before the *Limson* action was filed in federal court.

**DISPOSITION**

The judgment is affirmed.  In the interests of justice, the parties shall bear their own costs on appeal.

FUJISAKI, ACTING P.J.

WE CONCUR:

PETROU, J.

RODRÍGUEZ, J.

Trial Court:       City & County of San Francisco Superior Court

Trial Judge:      Hon. Anne-Christine Massullo

Counsel:          Litigation Advocacy Group, Glenn A. Murphy for Plaintiff and Appellant

                    Goldfarb & Lipman, Celia W. Lee, James T. Diamond, Jr., and Rye P. Murphy for Defendant and Respondent

*Bernuy v. Bridge Property Management Company (A163240)*