Filed 2/4/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TINA PARSONAGE, | D083831 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2021-00041299-CL-OE-CTL) |
| WAL-MART ASSOCIATES, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carolyn M. Caietti, Judge. Reversed with directions.

Pancer Law Corporation, Ian Pancer; and Leah Nicholls for Plaintiff and Appellant.

Seth E. Mermin, David S. Nahmias, and Jordan Hefcart for UC Berkeley Center for Consumer Law & Economic Justice and Public Justice as Amicus Curiae on behalf of Plaintiff and Appellant.

Horvitz & Levy, Jeremy B. Rosen, Sheridan L. Caldwell; Constangy, Brooks, Smith & Prophete and Cory J. King for Defendants and Respondents.

INTRODUCTION

California employers may not obtain an investigative consumer report to aid them in making employment decisions without complying with the Investigative Consumer Reporting Agencies Act (ICRAA).  (Civ. Code,[1] § 1786, et seq.)  An employer who fails to comply with any of ICRAA's requirements is liable to the consumer who is the subject of the report for "[a]ny actual damages sustained . . . as a result of the failure *or*, except in the case of class actions, *ten thousand dollars ($10,000), whichever sum is greater*."  (§ 1786.50, subd. (a)(1), italics added.)  We hold ICRAA, by its plain language, authorizes consumers to recover the statutory sum as a remedy for a violation of their statutory rights, without any further showing of injury. We thus conclude the trial court erred when it required a consumer to demonstrate a concrete injury, such as an adverse employment decision, to establish ICRAA standing and reverse its grant of summary judgment in favor of the employer.[2]

BACKGROUND

I.

*Overview of ICRAA*

An " 'investigative consumer report' " under ICRAA is "a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means." (§ 1786.2, subd. (c).)  An employer may not obtain such a report for

---

[1]     Undesignated statutory references are to the Civil Code.

[2]     We granted the UC Berkeley Center for Consumer Law & Economic Justice and Public Justice's application to file an amicus curiae brief in support of Tina Parsonage.

employment purposes without complying with ICRAA's disclosure and consent requirements.[3] (§§ 1786.12, subds. (d), (e), 1786.16, subd. (a)(2).)

Section 1786.16 provides that where "an investigative consumer report is sought for employment purposes other than suspicion of wrongdoing or misconduct by the subject of the investigation," a person may not procure the report, or cause the report to be made, unless the person has a permissible purpose (as defined in § 1786.12), provides a written disclosure to the consumer, and obtains the consumer's written authorization for the report. (§ 1786.16, subd. (a)(2)(A)–(C).)

As to the written disclosure, specifically, the person must provide "*a clear and conspicuous disclosure in writing* to the consumer at any time before the report is procured or caused to be made *in a document that consists solely of the disclosure*," that: (i) a report may be obtained; (ii) identifies the permissible purpose of the report; (iii) the "disclosure may include information on the consumer's character, general reputation, personal characteristics, and mode of living"; (iv) "[i]dentifies the name, address, and telephone number of the investigative consumer reporting agency conducting the investigation"; (v) notifies the consumer in writing of the nature and scope of the investigation requested, including a summary of the provisions of section 1786.22; and (vi) "[n]otifies the consumer of the Internet Web site address of the investigative consumer reporting agency identified in clause (iv), or, if the agency has no Internet Web site address, the telephone number of the agency, where the consumer may find information about the

---

[3] ICRAA also regulates investigative consumer reports for the purposes of underwriting insurance and renting a dwelling unit. Because this appeal involves a report obtained for employment purposes only, we focus on ICRAA's mandates regarding employment.

investigative reporting agency's privacy practices." (§ 1786.16, subd. (a)(2)(B)(i)–(vi), italics added.)

Section 1786.50 authorizes a consumer to bring suit for violations under ICRAA. It provides that "[a]n investigative consumer reporting agency or user of information that fails to comply with any requirement under [ICRAA] with respect to an investigative consumer report is liable to the consumer who is the subject of the report" for "[a]ny actual damages sustained by the consumer as a result of the failure, *or,* except in the case of class actions*, ten thousand dollars ($10,000), whichever sum is greater.*" (§ 1786.50, subd. (a)(1), italics added.)

Additionally, section 1786.50 permits a consumer in "any successful action to enforce any liability" under ICRAA to recover her costs, reasonable attorney fees as determined by the court, and punitive damages if the court determines the violation was "grossly negligent or willful." (§ 1786.50, subds. (a)(2) and (b).) But "where the failure to comply results in *a more favorable* investigative consumer report than if there had not been a failure to comply," ICRAA provides that the offending investigative consumer reporting agency or user of information "shall *not* be liable" to the consumer who is the subject of the report. (§ 1786.50, subd. (c), italics added.)

II.

*Parsonage's Complaint*

In June 2018, Parsonage applied for a job with Wal-Mart.[4] A few days later, she accepted an offer of employment as a sales associate conditioned upon successfully passing a background check. She electronically viewed and

---

[4]    Because the ICRAA disclosure at issue uses "Wal-Mart," we do the same for consistency. Wal-Mart includes Wal-Mart Associates, Inc., Wal-Mart Stores, Inc., and Walmart, Inc.

4

acknowledged receipt of a "Background Report Disclosure" and electronically signed a "Background Report Authorization form" to permit Wal-Mart to order the background check.

The disclosure form was 14 pages long.[5]  The "California Disclosure" began at page 9 and stated, "Wal-Mart will order an investigative consumer report on you in connection with your employment application, and if you are hired, or if you already work for Wal-Mart, may order additional such reports on you for employment purposes.  Such reports may contain information about your character, general reputation, personal characteristics, and mode of living."  The disclosure listed six consumer reporting agencies, complete with their corresponding addresses, websites, and telephone numbers.  Above the list, the disclosure stated, "You may call Wal-Mart Global Security at (800) 348-1931, Option 1, to find out which [consumer reporting agency] we used from the list."  The disclosure then summarized the provisions of section 1786.22.

Wal-Mart subsequently mailed Parsonage a copy of the background report it obtained.  The cover letter stated her report was issued by "First Advantage Background Services Corp" (one of the agencies from the list in the disclosure form) and provided its address and telephone number.  On June 15, 2018, Parsonage began her employment with Wal-Mart.

---

[5]    The first seven pages consisted of a notice that Wal-Mart will order "a consumer report ('background report')," followed by a "State Notice Addendum" containing details applicable to Minnesota and New York and a "Summary of Rights Under [the] FCRA," the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.).  The disclosure also provided definitions under "Article 23-A New York."  Parsonage does not rely on these additional details as a basis of her claim that Wal-Mart violated the standalone disclosure requirement.

In September 2021, Parsonage filed this action against Wal-Mart, asserting one cause of action for a violation of ICRAA.[6] She alleged Wal-Mart failed to identify " 'the name, address, and telephone number of the Investigative Consumer Reporting Agency conducting the investigation' " in violation of section 1786.16, subdivision (a)(2)(B)(iv), and, by including six agencies instead of one in the disclosure, it failed to make the disclosures in a clear and conspicuous manner in a standalone document in violation of section 1786.16, subdivision (a)(2)(B). She also alleged Wal-Mart failed to provide a checkbox to request a copy of her investigative consumer report (§ 1786, subd. (b)) and did not supply the required certification of compliance to the furnishing investigative consumer reporting agency before procuring the investigative consumer report (§ 1786, subd. (a)(4)). Parsonage sought recovery of "statutory damages in the amount of $10,000 for each violation of the ICRAA, or in the alternative actual damages in an amount according to proof (whichever is greater)," as well as attorney fees, costs, and punitive damages.

---

[6] We grant Wal-Mart's request to augment the record with Parsonage's complaint and Wal-Mart's answer, which were not originally included in the record. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

We note that "[a]n action to enforce any liability created under this title may be brought in any appropriate court of competent jurisdiction within two years from the date of discovery." (§ 1786.52.) However, we do not concern ourselves with the timeliness of Parsonage's complaint because Wal-Mart did not assert this as a basis for summary judgment below and has not raised the issue of timeliness on appeal. Moreover, the record before us does not reveal when Parsonage discovered the basis of her ICRAA claim.

## III.

### *Summary Judgment*

Wal-Mart moved for summary judgment on the sole basis that Parsonage lacked standing to pursue her ICRAA claim. Wal-Mart asserted Parsonage had not suffered any injury or harm from the "technical violations" of ICRAA during Wal-Mart's application and onboarding processes. Specifically, it argued Parsonage had not alleged the violations "harmed her in any way or caused injury to her interest in a fair and accurate report" or that "she suffered any adverse employment action as a result of any information in the background check report." "To the contrary," in its view, "the undisputed evidence shows that [Parsonage] received exactly what she sought—a job" with Wal-Mart.

Parsonage responded there was no dispute Wal-Mart violated ICRAA's requirements by failing to identify the investigative consumer reporting agency furnishing her background report in a standalone document and by including extraneous language in its disclosure form. Thus, she argued, she had standing under ICRAA to recover the statutory sum of $10,000 for a violation without any showing of harm or injury beyond the violation.

Parsonage added that, to the extent the court concluded a showing of injury was required, the background report in fact falsely stated she had been twice charged and once convicted of the offense of driving a *commercial vehicle* with knowledge of a suspended license, when the offenses in truth involved a non-commercial vehicle. She explained the former offense would "demonstrate a tendency to violate the law in one's performance of work duties" and that exposed her to "the risk of having her employment application declined." Because Wal-Mart failed to properly identify the agency furnishing the report, she was deprived of the opportunity to call the

7

agency and make the necessary correction that she was not charged or convicted of driving a commercial vehicle on a suspended license. In her view, that lost opportunity would have been crucial had she applied to work at a business with more exacting hiring standards.

The trial court agreed with Wal-Mart. It concluded Parsonage had not suffered an injury because she was hired by Wal-Mart, and she received a copy of the report she had authorized Wal-Mart to procure. Addressing Parsonage's belated claim that she was injured because there were falsities in the report, the court found her fear of lost opportunities "did not materialize" because, again, she was hired by Wal-Mart and there was no other " 'adverse employment decision based on false or inaccurate reporting.' " Consequently, the court ruled Parsonage lacked standing under ICRAA and Wal-Mart was entitled to judgment as a matter of law.

## DISCUSSION

We review the trial court's summary judgment order de novo. (*Olson v. La Jolla Neurological Associates* (2022) 85 Cal.App.5th 723, 733 (*Olson*).) In determining whether the trial court erred in concluding Parsonage lacked standing under ICRAA, we begin by noting important differences between California and federal law on standing.

### I.

### *California Law on Standing*

The power of federal courts is limited by Article III of the United States Constitution to the resolution of " 'Cases' and 'Controversies.' " (*TransUnion LLC v. Ramirez* (2021) 594 U.S. 413, 423.) "For there to be a case or controversy under Article III, the plaintiff must have a ' "personal stake" ' in the case—in other words, standing." (*Ibid.*) To establish standing in federal court, "a plaintiff must show (i) that he suffered an injury in fact that is

concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." (*Ibid.*) "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.' " (*Ibid.*) As a result of Article III's requirement of a concrete harm, "the mere fact that Congress [via a statute] said a consumer . . . may bring . . . a suit does not mean that a federal court necessarily has the power to hear it." (*Robins v. Spokeo, Inc.* (9th Cir. 2017) 867 F.3d 1108, 1112.)

"California law is different. California courts are not subject to the restrictions that Article III imposes on federal judicial power, and, unlike the federal Constitution, the California Constitution has no case-or-controversy requirement." (*Guracar v. Student Loan Solutions, LLC* (2025) 111 Cal.App.5th 330, 342 (*Guracar*), citing *Grosett v. Wenaas* (2008) 42 Cal.4th 1100, 1117, fn. 13.) "The California Legislature is therefore free to grant standing to sue in California courts absent concrete harm." (*Guracar*, at p. 342, citing *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83–91 (*Kim*).) It "may authorize consumers and others whose rights have been violated to recover statutory damages or penalties absent the concrete harm required in federal court by Article III." (*Guracar*, at p. 343.) In fact, "when the Legislature provides for statutory damages or penalties, it *often permits individuals who have suffered no concrete harm to seek such relief.*" (*Ibid.*, italics added.)

Consequently, where a cause of action is based on a California statute, standing is "a matter of statutory interpretation." (*Adolph v. Uber Technologies Inc.* (2023) 14 Cal.5th 1104, 1120 (*Adolph*).) "To ensure that relevant facts and issues are adequately presented, California statutes

9

generally require that plaintiffs have suffered some injury." (*Guracar*, *supra*, 111 Cal.App.5th at p. 343, citing *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175.)  But under California law, "injury" for standing purposes means "some 'invasion of the plaintiff's legally protected interests.' " (*Angelucci*, at p. 175.)  Thus, "if the statement of a cause of action shows an invasion of the plaintiff's legally protected interests, nothing further is required." (5 Witkin, Cal. Procedure (6th ed. 2025) Pleading, § 906, citing *Angelucci*, at p. 175.)

## II.

### *Relevant Statutes*

Before turning to the statutory text of ICRAA to determine its standing requirements, we summarize the evolution of ICRAA and two related statutes—the California Consumer Credit Reporting Agencies Act (CCRAA) (former § 1785.1 et seq., added by Stats. 1970, ch. 1348, § 1, p. 2512 and repealed by Stats. 1975, ch. 1271, § 2, p. 3377) and the federal Fair Credit Report Act (FCRA) (15 U.S.C. § 1681 et seq.)—since their inception provides important context for understanding ICRAA's purpose.[7]

---

7      Wal-Mart and Parsonage both requested we take judicial notice of legislative history documents related to ICRAA and CCRAA.  Wal-Mart objected to judicial notice of all but Exhibit J of Parsonage's request because the additional materials either duplicated Wal-Mart's request or Parsonage did not cite to the materials in her brief or explain their relevance to dispositive issues on appeal.  Because we find Parsonage's Exhibits A, D, E, J, and K relevant to the analysis in this opinion, we grant the request to take judicial notice of those exhibits as well as those contained in Wal-Mart's request.  (Evid. Code, §§ 452, subd. (c), 453, 459, subd. (a).)  Additionally, on our own motion, we take judicial notice of the additional legislative history materials cited in this opinion under Evidence Code sections 452, subdivision (c), and 459.  (*Olson*, *supra*, 85 Cal.App.5th at p. 735, fn. 4.)

In 1970, the Legislature enacted the CCRAA which "governed 'credit rating reports' that included consumer credit record and standing reports. That same year, Congress passed [the FCRA]," which "defined a 'consumer report' to include an individual's 'credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living' " and "distinguished between consumer reports that contained information obtained by personal interviews and consumer reports that were gathered by other means." (*First Student Cases* (2018) 5 Cal.5th 1026, 1032 (*First Student*); see 15 U.S.C. § 1681a(d)(1).)

In 1975, the Legislature repealed the 1970 CCRAA and, in its place, enacted a new version of the CCRAA through Assembly Bill No. 600 (1975–1976 Reg. Sess.) (Assembly Bill 600) (§ 1785.1 et. seq., added by Stats. 1975, ch. 1271, § 1, pp. 3369–3377). At the same time, the Legislature also enacted ICRAA through Assembly Bill No. 601 (1975–1976 Reg. Sess.) (Assembly Bill 601) (§ 1786 et seq., added by Stats. 1975, ch. 1272, § 1, pp. 3377–3387). CCRAA applied to consumer reports containing information "bearing on a consumer's credit worthiness, credit standing, or credit capacity" (Stats. 1975, ch.1271, § 1, p. 3370), while ICRAA regulated consumer reports used for employment and insurance purposes, and included information obtained by personal interviews (Stats. 1975, ch.1272, § 1, p. 3378). While ICRAA and CCRAA "were modeled after [the] FCRA" (*First Student*, *supra*, 5 Cal.5th at p. 1032), the Legislature explained there were "[s]ignificant differences," with ICRAA and CCRAA "provid[ing] more stringent and comprehensive regulation of consumer reporting transactions than the present federal law" (Assem. Com. on Finance, Insurance, and Commerce, Rep. on Assem. Bill Nos. 600 and 601 (1975–1976 Reg. Sess.), Mar. 31, 1975, p. 2).

As to ICRAA specifically, the Legislature explained it "[sought] to remedy the current *inadequacies* of the [CCRAA] of 1970 and the [FCRA] of 1971, regarding the regulation of content and dissemination of investigative consumer reports." (Sen. Com. on Judiciary, Background Information Assem. Bill No. 601 (1975–1976 Reg. Sess.), italics added.) The FCRA had been "declared inadequate in a number of respects by the agency responsible for its enforcement, the Federal Trade Commission." (Dept. of Consumer Affairs, Enrolled Bill Rep. on Assem. Bill No. 601 (1975–1976 Reg. Sess.), Sept. 17, 1975, p. 1.)[8] The Legislature noted Assembly Bill 601 was "designed to provide badly needed protections for California consumers in areas where the FCRA [had] proved most sadly deficient." (*Ibid.*)

One perceived shortcoming of the FCRA was that "in order to collect compensation for damages it is necessary for the consumer to prove that a consumer reporting agency negligently failed to comply with the [FCRA]. As actual damages are extremely difficult to determine (what damages are sustained when credit is denied?), there is little incentive for the consumer to exercise his right to sue in the event of negligent noncompliance and little incentive for the consumer reporting agency to comply with the [FCRA]." (Dept. of Consumer Affairs, Enrolled Bill Rep. on Assem. Bill No. 601 (1975–1976 Reg. Sess.), Sept. 17, 1975, p. 2.) Thus, "A[ssembly] B[ill] 601 [sought] to inform the consumer of reports on him [or her], and provide him [or her] the means to check, change, or dispute inaccurate information." (Sen. Com. on Judiciary, Background Information on Assem. Bill No. 601 (1975–1976 Reg. Sess.).) The Legislature expressly removed from an earlier draft of

---

8    The California Supreme Court has routinely stated that enrolled bill reports are instructive as to matters of legislative intent. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1218, fn. 3.)

ICRAA a requirement that the plaintiff demonstrate the investigative consumer reporting agency or user of information "negligently" failed to comply with a requirement under ICRAA. (Conf. Amend. to Assem. Bill No. 601 (1975–1976 Reg. Sess.) Sept. 12, 1975.) The remedy of "[a]ny actual damages . . . or . . . three hundred dollars ($300), whichever sum is greater" (former § 1786.50, subd. (a)(1)), provided the needed incentive so as to "ma[ke] the agency liable to the consumer for a minimum of $300 if they fail to follow the requirements of the bill" (Sen. Com. on Finance, Insurance, and Commerce, 3d reading analysis of Assem. Bill No. 601 (1975–1976 Reg. Sess.)).

ICRAA and CCRAA were also intended "to serve complementary, *but not identical*, goals. Both ICRAA and CCRAA had similar purposes. They were enacted to ensure that consumer reporting agencies 'exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.' (§§ 1785.1, subd. (c), 1786, subd. (b).)" (*First Student*, *supra*, 5 Cal.5th at p. 1032, italics added.)

As originally enacted in 1975, ICRAA and CCRAA both provided that any agency or user of information that "fail[ed] to comply with any requirement" under its provisions was liable to the consumer for "[a]ny actual damages sustained by the consumer as a result of the failure or, except in the case of class actions, three hundred dollars ($300), whichever sum is greater[.]" (Former §§ 1786.50, subd. (a)(1) [ICRAA], and Former 1785.30, subd. (a)(1) [CCCRA; requiring negligent failure to comply].) But whereas ICRAA maintained this alternate recovery provision for failure to comply, the Legislature amended CCRAA the following year to authorize "[a]ny applicant who *suffers damage* as a result of a violation of [the CCRAA] by any person" to bring an action to recover actual damages in the case of a negligent

13

violation and, for a willful violation, actual damages, "[p]unitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation as the court deems proper," and any other relief deemed proper by the court.  (Former § 1785.31, subd. (a), italics added.)

In 1998, the Legislature amended ICRAA in "response to the sheer volume of employers using background checks to prescreen applicants." (*First Student*, *supra*, 5 Cal.5th at pp. 1033–1034.)  It also reacted to concerns that "[t]he existing penalty of $300 for false information contained in a report [wa]s not a sufficient incentive to ensure accuracy."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1454 (1997–1998 Reg. Sess.), as amended May 12, 1998, p. 6.)  As introduced, Senate Bill No. 1454 proposed increasing the amount from $300 to $1,000.  (Sen. Bill No. 1454 (1997–1998 Reg. Sess.) § 12, as introduced Feb. 2, 1998.) Ultimately, the Legislature increased the alternate remedy to $2,500 (Sen. Amend. to Sen. Bill No. 1454 (1997–1998 Reg. Sess.) § 12, May 12, 1998) and explained the amendment "was intended to promote disclosure and accuracy in background checks, especially in the rental, employment, and insurance contexts."  (*First Student*, *supra*, 5 Cal.5th at p. 1034, citing Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1454 (1997–1998 Reg. Sess.) as amended Apr. 27, 1998, p. 4.)

In 2001, the Legislature amended portions of both ICRAA and CCRAA to incorporate provisions addressing identity theft, among other things. (Stats. 2001, ch. 354, § 18.)  As to ICRAA, the Legislature also again sought to "increase penalties for violations" and raised the sum available as an alternative to actual damages from $2,500 to $10,000, where it currently stands.  (Stats. 2001, ch. 354, § 18.)

The current version of ICRAA reflects the Legislature's express concern that identity theft could "often go undetected for years without the victim being aware his [or her] identity has been misused." (§ 1786, subds. (c)–(d).) Because it found that "notice of identity theft is critical before the victim can take steps to stop and prosecute this crime," the Legislature concluded consumers were best protected if they were "automatically given copies of any investigative consumer reports made on them." (*Id.*, subd. (e).) Ultimately, the stated purpose of ICRAA is "to require that investigative consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for employment, insurance information, and information relating to the hiring of dwelling units in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of the information in accordance with the requirements of this title." (*Id.*, subd. (f).)

As detailed in our overview of ICRAA, ICRAA furthers this purpose by strictly limiting when an investigative consumer reporting agency may furnish an investigative consumer report (§ 1786.12) and what may be included in such a report (§ 1786.18).

### III.

### *Standing Under ICRAA*

Parsonage contends no injury beyond showing a violation is required for ICRAA standing. Because she presented evidence that Wal-Mart violated section 1786.16 by failing to solely identify the specific agency that ordered her report and by including extraneous information in its disclosure form— namely, five additional background check agencies that might have furnished

the report—she argues she sufficiently demonstrated standing to sue. We agree.

All that is required for standing in California is that Parsonage has claimed " 'a sufficient interest in the subject matter of the dispute to press [her] case with vigor.' " (*Kim, supra,* 9 Cal.5th at p. 83.) As demonstrated by the plain language of the Legislature's present findings and declarations and the history of ICRAA's amendment, the Legislature's primary purpose in enacting ICRAA was, and remains, to provide consumers notice that an entity will obtain an investigative consumer report and notice of what is contained in the report so the consumer may attempt to cure any errors. (Compare Assem. Bill 601, as introduced Jan. 28, 1975, §§ 9999.16, subd. (b), 9999.22[9] with § 1786.16, subd. (a)(2), (5), (b)(1).) The statutory language premises standing on noncompliance with the requirements for providing such notice. (§§ 1786.16, subd. (a)(2)(B), 1786.50, subd. (a).) Section 1786.50 provides that a "user of information that fails to comply with any requirement under this title with respect to an investigative consumer report is liable to the consumer." (§1786.50, subd. (a).)

One such requirement is that when a user obtains an investigative consumer report for employment purposes not related to suspicion of

---

[9]     The original bill required a person procuring an investigative consumer report for employment purposes, or causing one to be prepared, to: "not later than three days after the date on which the report was first requested, *notify* the consumer in writing that an investigative consumer report regarding the consumer's character, general reputation, personal characteristics, and mode of living will be made. This notification shall include the name, address and telephone number of the consumer reporting agency conducting or preparing the investigation or investigative consumer report and a summary of the provisions of Section 9999.18." (Assem. Bill 601, as introduced Jan. 28, 1975, § 9999.16, subd. (b), italics added.)

wrongdoing or misconduct, the user must provide "a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure." (§ 1786.16, subd. (a)(2)(A)–(B).) The disclosure must, among other things, identify "the name, address, and telephone number of the investigative consumer reporting agency conducting the investigation." (§ 1786.16, subd. (a)(2)(B)(iv).) Under the plain language of the statute, a user that does not identify the consumer reporting agency that conducted the investigation in a document that consists *solely* of that disclosure "is liable to the consumer." (§ 1786.50, subd. (a).)

Here, Parsonage's interest in the outcome of the lawsuit relates to the statute's purpose of providing notice. By including five additional consumer reporting agencies in the disclosure, Wal-Mart invaded her legally protected interest by obscuring the notice of what entity would provide the report and how to contact the agency. Although Wal-Mart argues these are mere "technical violations," they are violations nonetheless.[10]

---

[10] Wal-Mart characterizes Parsonage's claim as alleging "technical violations" of ICRAA and highlighted in its briefing below that Parsonage's counsel has filed numerous similar actions against it on behalf of 141 individual named plaintiffs. Although Wal-Mart may have intended to suggest such "technical violations" do not warrant such a high penalty, the fact that 141 plaintiffs have alleged ICRAA violations by Wal-Mart underscores the Legislature's decision to provide an incentive to rectify this kind of recurring conduct. Furthermore, as another appellate court has observed, "to the extent [the defendant] believes that a $10,000 statutory penalty is unfair when *no actual damage* is shown or is too much when [an] entity fails to comply with ICRAA requirements, those are policy matters for the Legislature to decide." (*Bernuy v. Bridge Property Mgmnt. Co.* (2023) 89 Cal.App.5th 1174, 1187, italics added.)

17

Wal-Mart has not argued the meaning of "solely" is ambiguous or that it means anything other than the commonly understood definition, "singly, alone" or "to the exclusion of alternate or competing things (such as persons, purposes, duties)." (Merriam-Webster's Unabridged Dict. Online (2025) <https://unabridged.merriam-webster.com/unabridged/solely> [as of Feb. 4, 2026]; see also *Walker v. Fred Meyer, Inc.* (9th Cir. 2020) 953 F.3d 1082, 1088 [determining as to FCRA's nearly identical standalone disclosure language that "a disclosure form violates the FCRA's standalone requirement if it contains *any extraneous information* beyond the disclosure required by the FCRA" (italics added)].)

ICRAA's remedies provision does not add any additional standing requirement, such as a showing of actual damages or injury. As we have noted, it provides that "[a]n investigative consumer reporting agency or user of information that *fails to comply with any requirement* under [ICRAA] with respect to an investigative consumer report *is liable* to the consumer who is the subject of the report" for "[a]ny actual damages sustained by the consumer as a result of the failure, *or, except in the case of class actions, ten thousand dollars ($10,000), whichever sum is greater*." (§ 1786.50, subd. (a)(1), italics added.) In specifying that individuals may recover actual damages, if "[a]ny," the Legislature did not require that the plaintiff suffer any actual damages from a concrete injury. (*Ibid*.) As the Court of Appeal pointed out in construing a similar consumer protection law in *Chai v. Velocity Investments, LLC* (2025) 108 Cal.App.5th 1030, 1037 (*Chai*), "[t]he Legislature could have set statutory damages as a percentage or product of actual damages, leaving zero entitlement to statutory damages when actual damages were nonexistent. It did not." (*Id*. at p. 1038.) Rather, in providing that the agency or user is liable to the consumer for actual damages or

18

$10,000, "whichever sum is greater," the Legislature made clear the agency or user should be held liable regardless of whether the consumer suffers any actual damages. (§ 1786.50, subd. (a)(1).)

The other remedies provisions also do not lead us to conclude ICRAA requires a showing of concrete injury. Section 1786.50, subdivision (a)(2), does not mention injury in providing costs and reasonable attorney's fees following a "successful action to enforce any liability" under ICRAA. The punitive damages provision likewise focuses only on a "violation" and provides damages where said violation is "grossly negligent or willful." (§ 1786.50, subd. (b).) Wal-Mart argues the presence of a separate punitive damages provision indicates the relief in section 1786.50, subdivision (a), is not a penalty. (See § 1786.50, subd. (b).) Not necessarily. The Legislature may rationally have sought to deter noncompliance of any type via subdivision (a) of section 1786.50 while more stringently punishing "grossly negligent or willful" violations via subdivision (b).

We also find comparison to ICRAA's sister provisions instructive in evaluating whether the Legislature intended its statutory remedy to compensate for injury, or to punish and deter. Whereas ICRAA provides that "[a]n investigative consumer reporting agency or user of information that *fails to comply with any requirement* under [ICRAA] with respect to an investigative consumer report *is liable* to the consumer who is the subject of the report" for "[a]ny actual damages sustained by the consumer as a result of the failure, or, except in the case of class actions, ten thousand dollars ($10,000), whichever sum is greater" (§ 1786.50, subd. (a)(1), italics added), the CCRAA provides, very differently, that "[a]ny consumer who *suffers damages* as a result of a violation of this title by any person may bring an action in a court of appropriate jurisdiction against that person to

19

recover . . . *actual damages*" for a negligent or willful violation (§ 1785.31, subd. (a)(1)–(2), italics added).  It is clear the Legislature limited recovery under CCRAA to those who suffered an injury that resulted in actual damages.  ICRAA, by contrast, provides no qualifier except a failure to comply and expressly provides for recovery of $10,000 as an alternative to actual damages.  (§ 1786. 50, subd. (a).)

The FCRA similarly specifies a statutory sum as an alternative to actual damages, but it qualifies the statutory sum as "damages," providing that a consumer may recover "*damages* of not less than $100 and not more than $1,000."  (15 U.S.C. § 1681n, subd. (a)(1)(A), italics added.)  As ICRAA and the CCRAA had similar purposes and were modeled after the FCRA (*First Student*, *supra*, 5 Cal.5th at p. 1032), the Legislature's omission of any similar modifying language in ICRAA's $10,000 remedy requiring "damages" is significant.  Our high court has long held that " '[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.' " (*Richfield Oil Corp. v. Crawford* (1952) 39 Cal.2d 729, 735.)  The omission is particularly noteworthy here where the Legislature has modified ICRAA several times since the language of the CCRAA and the FCRA were altered, and yet it opted not to modify ICRAA.  Moreover, that ICRAA provides a minimum recovery of 10 times as much as the FCRA demonstrates it deterrent purpose.  Therefore, to the extent the other statutes have been construed as requiring a showing of injury for standing, we conclude the lack of such damages language in ICRAA compels a different result.

Wal-Mart argues it is significant that other courts have referred to ICRAA's minimum recovery provision as " 'statutory damages,' " as

20

Parsonage herself did in her complaint. We disagree that describing them as "statutory damages" as opposed to "penalties" is necessarily dispositive of the standing issue. As the court explained in *Guracar*, there is "an obvious flaw in [the] logic" of assuming that statutory damages must be compensatory. (*Guracar*, *supra*, 111 Cal.App.5th at p. 345.) Such a remedy may instead " 'serve to motivate compliance with the law and punish wrongdoers.' " (*Ibid*: see also *Kashanian v. National Enterprise Systems, Inc.* (2025) 114 Cal.App.5th 1037, 1045–1046, review denied Dec. 30, 2025 (*Kashanian*) [concluding 15 U.S.C. § 1692k provides statutory damages for noncompliance without requiring showing of injury].)

During the pendency of this appeal, the Second District decided *Yeh v. Barrington Pacific, LLC* (Jan. 21, 2026, B337904) __ Cal.App.5th __ [2026 WL 161299] (*Yeh*)), which involved an ICRAA challenge within the context of apartment rental agreements. The *Yeh* court concluded, as we do, that plaintiffs need not show an injury beyond a violation of their rights to have standing under ICRAA. (*Yeh*, at p. __ [2026 WL 161299, *1].) In reaching this conclusion, the *Yeh* court also agreed with the *Guracar* and *Chai* courts that "the semantic distinction between 'damages' and 'penalties' is not dispositive of standing." (*Yeh*, at p. __ [2026 WL 161299, *10].)

The legislative history comports with our conclusion that, regardless of the label, ICRAA does not require a showing of injury beyond violation to confer standing. (See *Kim, supra,* 9 Cal.5th at p. 83 [if the statutory language " 'supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history' "].) The Legislature repeatedly expressed its goal of more stringently regulating not only the content of investigative consumer reports but the scope and notice of their dissemination. (See, e.g., Sen. Com. on

Judiciary, Background Information on Assem. Bill No. 601 (1975–1976 Reg. Sess.); *First Student*, *supra*, 5 Cal.5th at p. 1034, citing Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1454 (1997–1998 Reg. Sess.) as amended Apr. 27, 1998, p. 4.)  To deter noncompliance, it increased the "penalty of $300" (Sen. Rules Com., Off. Of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1454 (1997–1998 Reg. Sess.), as amended May 12, 1998) to $2,500 (Sen. Amend. to Sen. Bill No. 1454 (1997–1998 Reg. Sess.) § 12, May 12, 1998) and then to the substantial sum of $10,000 (Stats. 2001, ch. 354, § 18).  To require a plaintiff to demonstrate concrete injury would substantially impede these goals and render the $10,000 ineffective as a deterrent.

Furthermore, ICRAA expresses that one purpose is "to require that investigative consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for employment." (§ 1786, subd. (f).)  As explained in the legislative history, inaccurate reports also harm employers "by denying them access to honest and productive persons." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1454 (1997–1998 Reg. Sess.) as amended Apr. 27, 1998, p. 4.)  It cannot be that the Legislature intended a plaintiff's standing to turn on whether the plaintiff showed injury to *employers* who were deprived of the plaintiff's work by the violation.  Thus, collectively, the legislative history demonstrates a legislative intent to incentivize consumer reporting agencies to comply with ICRAA, to penalize noncompliance, and to make it worthwhile for consumers to sue for noncompliance.  (See Dept. of Consumer Affairs, Enrolled Bill Rep. on Assem. Bill No. 601 (1975–1976 Reg. Sess.), Sept. 17, 1975, pp. 2–3.)  All these goals can be achieved without requiring a showing of concrete injury.

22

Indeed, ICRAA was intended to remedy shortcomings of the prior version of the CCRAA and the FCRA, not duplicate them. Violations of most, if not all, of ICRAA's provisions would result in actual damages that were difficult to prove or no damages at all,[11] which is why the Legislature instead directed the focus on the agencies and users and required only a showing of noncompliance for standing. To construe ICRAA as requiring a plaintiff to show concrete injury, such as downstream adverse consequences, would be contrary to the Legislature's goal of making it a more effective tool than the FCRA.

Accordingly, we conclude, as did the *Yeh* court, that ICRAA only requires a plaintiff to demonstrate a statutory violation to establish standing. And thus, Parsonage has standing to pursue her ICRAA claim.[12] As the

___

[11] For instance, the Legislature evidently thought it was harmful for agencies to provide reports on jobseekers without notice to the potential employee or to disclose confidential information unnecessarily. It also saw harm in companies relying on inaccurate reports where the consumer had no ability to view or correct the report. All these outcomes can result in harm that is difficult to quantify or no harm at all. If an employer receives an inaccurate report with no notice to the consumer, a jobseeker may never know why he or she did not get the job. Or, as with Parsonage, it may cause no downstream injury because the jobseeker is hired anyway. Disclosure of confidential information into the wrong hands may result in delayed harm by a third party that is difficult to connect to the inappropriate disclosure. Or the recipient may simply disregard the information, and no adverse effects will arise. And denying a consumer a way to contact the agency and an opportunity to correct known inaccuracies can result in unknown future harm, although it is not guaranteed to cause any injury. All of these justify a penalty as a means of deterrence because violations may frequently result in no injury, or any resulting damages would be difficult to prove.

[12] The fact that Parsonage's report did, in fact, contain inaccuracies only reinforces the need for such notice and the opportunity to cure.

*Chai* court explained, there is "no reason why this state's Legislature cannot create a statutory right, deem a violation of that right an injury sufficient to confer standing—independent of actual damages—and provide a modest monetary award as a remedy (or offset against the debt) for those motivated to pursue it." (*Chai, supra,* 108 Cal.App.5th at p. 1040, citing *Kim, supra,* 9 Cal.5th at p. 83.) Nor is ICRAA "a novel exercise of this authority." (*Chai*, at p. 1040; see *id.*, at p. 1037 [concluding Fair Debt Buying Practices Act (FDBPA) (§1788.50 et seq.) confers standing on any person who pleads a violation of their statutory rights]; see also *Guracar, supra,* 111 Cal.App.5th at pp. 345–349 [no showing of actual damages is required to demonstrate standing under the FDBPA, the Private Student Loan Collections Reform Act (§ 1788.200 et seq.), or the Rosenthal Fair Debt Collection Practices Act (§ 1788 et seq.)]; and *Kashanian, supra,* 114 Cal.App.5th at pp. 1041–1042 [standing under Consumer Collection Notice law (§ 1812.700 et seq.) and the Rosenthal Fair Debt Collection Practices Act (§ 1788 et seq.) arises from debt collector's violation of the statutes not from a plaintiff suffering actual injury].)

Our conclusion is also consistent with our high court's conclusions regarding standing under the Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.). Before the statute was amended in July 2024 (see Lab. Code, § 2699; stats. 2024, ch. 44, § 1), our high court concluded "[t]he plain language of [Labor Code] section 2699[, subdivision] (c) has only two requirements for PAGA standing. The plaintiff must be an aggrieved employee, that is, someone 'who was employed by the alleged violator' and 'against whom one or more of the alleged violations was committed.'" (*Kim*, *supra*, 9 Cal.5th at pp. 83–84.) The defendant in *Kim* conceded the plaintiff had standing to sue initially but argued he ceased to have standing after he

settled claims for individual relief and accepted compensation for his injury. (*Id.* at p. 84.)  The court rejected this argument, explaining "[t]he Legislature defined PAGA standing in terms of violations, not injury." (*Ibid.*)  It said the plaintiff became an aggrieved employee, and entitled to PAGA standing, when the defendant committed Labor Code violations against him, and "[s]ettlement did not nullify these violations." (*Ibid.*)  The court made clear "[t]he *remedy* for a Labor Code violation, through settlement or other means, is distinct from the *fact* of the violation itself." (*Ibid.*)  And, as our high court later affirmed, "only the latter is required for PAGA standing." (*Adolph, supra*, 14 Cal.5th at p. 1120).

Wal-Mart resists this analogy to PAGA because, it argues, PAGA is designed to benefit the general public, not the party bringing the action.  This distinction is immaterial for standing purposes.  Under PAGA, the focus of standing is on the fact of the violation, which happens to the aggrieved party, regardless of whether the remedy ultimately benefits the aggrieved party or the general public.  As ICRAA's focus is also on the failure to comply with its requirements, the reasoning of *Kim* and *Adolph* lends support to our analysis.

Our interpretation also gives rational meaning to section 1786.50, subdivision (c).  This subdivision provides that "[n]otwithstanding subdivision (a), an investigative consumer reporting agency or user of information that fails to comply with any requirement under this title with respect to an investigative consumer report shall *not be liable* to a consumer who is the subject of the report where the failure to comply results in *a more favorable investigative consumer report* than if there had not been a failure to comply." (§ 1786.50, subd. (c), italics added.)  Parsonage contends that if ICRAA required an injury for standing, it would be an utter redundancy to

25

state that plaintiffs who benefit from an ICRAA violation cannot recover. This is true. Read in the context of our holding that noncompliance is all that is required for standing, this provision provides that a plaintiff may establish standing but still not be able to ultimately recover because the failure to comply resulted in a more favorable investigative consumer report. Because we seek to interpret statutory ambiguities to " '[adopt] the construction which best serves to harmonize the statute internally and with related statutes' " (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126), our interpretation achieves this result.

IV.

*We Decline To Follow Limon and Muha*

Wal-Mart argues that because ICRAA was modeled after the FCRA, we should follow the reasoning explained in *Limon v. Circle K Stores, Inc.* (2022) 84 Cal.App.5th 671 (*Limon*), and later adopted in *Muha v. Experian Information Solutions, Inc.* (2024) 106 Cal.App.5th 199 (*Muha*), and conclude that ICRAA, like the FCRA, requires a showing of injury to establish standing. In the *Limon* court's view, the statutory damages provision in the FCRA was intended to compensate a plaintiff for injury and not to "penalize a company for violation of the FCRA." (*Limon*, at p. 703.) Wal-Mart asserts that ICRAA's $10,000 sum is also a statutory damages provision. Accordingly, given the similarities between ICRAA and the FCRA, it argues we should follow the logic of *Limon* and conclude injury is required to demonstrate standing for ICRAA. Although the trial court was persuaded by this argument, we are not.

We decline to follow *Limon* and *Muha*, for two reasons. First, like the *Yeh* court, we do not find the analogy to the FCRA dispositive. (See *Yeh, supra,* __ Cal.App.5th at p. __ [2026 WL 161299, *9].) Second, we disagree

26

with *Limon's* (and by extension, *Muha*'s) reliance on the "beneficial interest" standard to assess standing outside the context of writ of mandate actions. (See *Limon, supra,* 84 Cal.App.5th at pp. 699–700; *Muha, supra,* 106 Cal.App.5th at p. 208.)

As we have already discussed, the different text used in ICRAA's remedies provision persuades us that the Legislature intended ICRAA to provide more stringent consumer protections than the FCRA and to serve as a deterrent. It specifically was enacted to correct shortcomings of the FCRA, including the requirement of proving actual damages.

Wal-Mart points out that, in seeking to distinguish the FDBPA from the FCRA at issue in *Limon*, the *Chai* court stated that "California's Act, unlike the federal FCRA as interpreted in *Limon*, does not prescribe statutory damages as a disjunctive *alternative* to 'actual damages'; 'the sum' requires 'statutory damages' in addition to '[a]ny actual damages' in individual actions, and 'additional damages' are available in class actions." (*Chai, supra,* 108 Cal.App.5th at p. 1042.) Wal-Mart contends that, as ICRAA, like the FCRA, provides for actual damages *or* a minimum recovery as alternative forms of compensation, the *Chai* court's reasoning supports concluding that ICRAA requires injury for standing. We disagree.

The *Chai* court had already explained that " 'the sum of' actual and statutory damages signifies that actual damages only add to a debt buyer's liability under the [FDDBPA], not that the absence of actual damages negates it." (*Chai, supra,* 108 Cal.App.5th at p. 1038.) The Legislature afforded courts "discretion to award statutory damages within the prescribed range of $100 to $1,000, without requiring or even suggesting the court factor in the actual damages when deciding what statutory damages to allow. Whether actual damage from the informational injury is nonexistent or else

27

fully compensated under section 1788.62, subdivision (a)(1) [of the FDBPA], an offending debt buyer is liable to the consumer for statutory damages 'not less than [$100] nor greater than [$1,000].'  (§ 1788.62, subd. (a)(2).) Statutory damages, then, follow from a debt buyer's violation of the [FDBPA] 'with respect to' the consumer—the only injury necessary to standing."  (*Ibid.*) ICRAA standing similarly flows from noncompliance with any of its requirements, and the Legislature did not specify the consumer must suffer any actual damages before being eligible for the $10,000.  As in *Chai*, nothing more than a violation of ICRAA is required for standing.

We thus decline to follow *Limon's* and *Muha*'s standing analysis based on their interpretation of the FCRA.

Furthermore, we disagree the "beneficial interest" standard relied on in *Limon* and *Muha* was intended to apply as broadly as these courts imply. The *Limon* court interpreted California standing cases as suggesting that "the beneficial interest requirement applies *generally* to questions of standing—except, of course, in cases involving public standing or where the statute at issue otherwise confers standing on a plaintiff."  (*Limon, supra,* 84 Cal.App.5th at p. 699.)  "A beneficial interest means the party has a special interest over and above the interest of the public at large."  (*Muha, supra,* 106 Cal.App.5th at p. 208.)  This standard is considered " 'equivalent to the federal "injury in fact" test,' " and requires proof that the defendant invaded " ' "a legally protected interest that is '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' " ' "  (*Ibid.*)  Because both the *Limon* and *Muha* courts concluded that the public standing exception did not apply to FCRA cases and the FCRA did not otherwise confer standing on a plaintiff who had not suffered a concrete injury, they concluded the uninjured plaintiffs in each case lacked standing under the

28

FCRA because they failed to demonstrate a beneficial interest. (*Limon,* at pp. 700, 703; *Muha,* at pp. 208–209.)

As amicus explain, however, neither the California Constitution nor the Legislature has ever established a heightened default requirement for standing for those who seek access to California's courts of general jurisdiction. Instead, the Legislature imposes a heightened standard only in limited instances. For example, as with standing in other contexts, the beneficial interest standard arises from a statute. Code of Civil Procedure section 1086 allows a court to issue a writ of mandate "in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law" but only "upon the verified petition of the party beneficially interested." But for ordinary cases where there *is* a plain, speedy, and adequate remedy, we are not persuaded that Code of Civil Procedure section 1086's standing provision should apply as an overarching requirement.

Amicus reviewed the standing cases relied upon by *Limon* and *Muha* and explained that they stem from writ of mandate actions or simply asserted without analysis that the beneficial interest test applied. As this line of cases veers away from California standing law requiring nothing more than showing a sufficient interest in pursuing the matter, we question the basis for requiring a plaintiff to demonstrate an injury-in-fact unless the relevant statute provides otherwise. As Wal-Mart itself concedes in its opposition to amicus's brief, "[i]n state court, there is no free-floating standing requirement like Article III that limits judicial review for statutory claims."[13] (See also

---

[13] Notably, Wal-Mart argues in opposition to amicus's brief and at oral argument that the beneficial interest test was not central to the *Limon* court's analysis or the trial court's decision below, and that the *Limon* court mentioned "beneficial interest" only once in its analysis. Both assertions are

*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247–1248 ["Unlike the federal Constitution, our state Constitution has no case or controversy requirement imposing an *independent* jurisdictional limitation on our standing doctrine" (italics added)].) And yet, Wal-Mart asks us to impose just such a requirement. Based on our review of relevant caselaw, we find no basis for importing the beneficial interest standard as a standing requirement for ICRAA.

Because we conclude Parsonage has standing to pursue her ICRAA claim, the trial court erred in granting summary judgment to Wal-Mart. As Wal-Mart did not move for summary judgment on any other grounds and has not argued alternative grounds for affirming on appeal, the judgment is reversed.

---

inaccurate. The only reason the *Limon* court concluded a plaintiff was required to demonstrate a concrete injury was because it viewed showing a beneficial interest as the default standing requirement, and this requirement was equivalent to the federal injury-in-fact test. (*Limon, supra,* 84 Cal.App.5th at pp. 699–700.) It discussed this test repeatedly throughout the opinion in assessing whether any exceptions applied within the context of the FCRA.

## DISPOSITION

The judgment is reversed with directions to the trial court to vacate the order granting summary judgment. Parsonage is entitled to her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                                                                    DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.